UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENN FORREST MURRAY,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>      Defendant. | Case # 1:18-CV-28-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Glenn Forrest Murray ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. For the reasons that follow, the Commissioner's motion (ECF No. 11) is **GRANTED**, and Plaintiff's motion (ECF No. 8) is **DENIED**.

## BACKGROUND

On December 26, 2013, Plaintiff protectively filed his DIB application, alleging he was disabled November 15, 2013, due to a back injury in his thoracic spine. ECF No. 5, Transcript (Tr.) 77, 182-88, 274. Plaintiff's application was denied initially, and he subsequently requested a hearing. Tr. 78-82, 35-36. Plaintiff's hearing was held on August 1, 2016, before Administrative Law Judge Elizabeth W. Koennecke (the "ALJ"). Tr.19. A supplemental hearing was held via video teleconference on September 2, 2016. *Id*. Plaintiff appeared and testified and was represented by counsel at the hearing. *Id*. Heather Benton, a vocational expert ("VE"), also

testified. *Id*. On September 28, 2016, following a *de novo* review of his application, the ALJ found Plaintiff not disabled through the date of the ALJ decision. Tr. 19-30. On November 7, 2017, the Appeals Council denied review, and the ALJ's decision thus became the Commissioner's final decision subject to judicial review under 42 U.S.C. § 405(g). Tr. 1-7.

Plaintiff was 36-years old on his alleged onset date of November 15, 2013. Tr. 182. Plaintiff alleged that a back injury in his thoracic spine limited his ability to work. Tr. 274. Plaintiff was involved in an all-terrain vehicle ("ATV") accident in July 2005, during which he sustained a thoracic spine compression injury. Tr. 364. After this 2005 injury, Plaintiff returned to work in the construction industry from 2006 through 2013, earning $266,474.72. Tr. 190-92. In 2013 and earlier, Plaintiff worked as a carpenter for a construction company. Tr. 42. As a carpenter, Plaintiff performed "custom woodworking," making flooring, cabinets, and trim. Tr. 52. Plaintiff also worked as a supervisor. *Id*. Plaintiff last worked as a self-employed contractor three weeks prior to the August 2016 administrative hearing, performing relatively strenuous tasks, including washing and painting a deck. Tr. 41.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. Id. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. The ALJ found at step one of the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 15, 2013, through September 28, 2016, the date of the ALJ decision. Tr. 22. At step two, the ALJ found that Plaintiff had severe neck and back impairment. *Id*. At step three, the ALJ found that none of Plaintiff's impairments met or equaled any of the listed impairments at Appendix 1 of Subpart P of Part 404 of 20 C.F.R. during the relevant time. Tr. 23.

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC"), or the most he could still do despite his impairments, 20 C.F.R. § 404.1545, to lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for 6 hours during an 8-hour workday; and stand and walk for 4 hours during an 8-hour workday. Tr. 23. The ALJ found that Plaintiff could occasionally bend and frequently, but not continuously, twist at the neck. *Id*. Plaintiff could work jobs that can be performed in the sitting and standing position and was able to remain on task during position changes. *Id*.

The ALJ found at step four of the sequential evaluation process, with the assistance of VE testimony, that Plaintiff could return to his past relevant work as a carpenter labor supervisor as it is generally performed in the national economy. Tr. 28, 60-62. As an alternative finding at step five, relying on VE testimony, the ALJ concluded that a person with Plaintiff's age, education,

work experience, and RFC could make a successful adjustment to unskilled work existing in significant numbers in the national economy, including the jobs of hand packager, production worker, and inspector. Tr. 28-30, 60-62.

## II. Analysis

Plaintiff essentially asserts a single argument. Plaintiff contends that because the ALJ improperly elevated her own lay opinion over that of competent medical opinion, the ALJ's RFC determination was not supported by substantial evidence.

### A. The ALJ Properly Considered and Weighed the Available Medical Evidence.

Plaintiff objects to the ALJ's decision to grant "little evidentiary weight" to the opinion of consultative examiner, Dr. Harbinder Toor. *See* ECF No. 8 at 10-12; Tr.27. Plaintiff also complains that "[i]n the absence of supporting expert medical opinion, the ALJ should not have engaged in [her] own evaluations of the medical findings." ECF No. 8 at 10 (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citations omitted)).

When the district court is "presented with the not uncommon situation of conflicting medical evidence, . . . . [t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). In this case, the ALJ did just that. She weighed the record as a whole in formulating her RFC finding and provided good reasons supported by substantial evidence for her conclusions. Tr. 23-28, 338.

In reaching her decision, the ALJ properly considered that Plaintiff had required only minimal, conservative treatment for his allegedly disabling pain. Tr. 26. Other than some x-rays taken in January 2014, the record does not show that Plaintiff sought any treatment for his pain

5

until December 2015—more than two years after his alleged onset of disability. Tr. 182, 400. When he finally did present for treatment, he told Julie Grover, FNP ("Ms. Grover"). that he had a history of back pain and "generally he self-treats with pot, which seems to work well for him." Tr. 400. In January 2016, Plaintiff was treated with only hot packs on the painful region, chiropractic manipulations and adjustments, and a soft tissue massage. Tr. 346.

At appointments in May and June 2016, Plaintiff told orthopedist Peter N. Capicotto, M.D. ("Dr. Capicotto") and neurologist Darrick J. Alaimo, M.D. ("Dr. Alaimo") that he took only ibuprofen despite his allegedly debilitating pain. Tr. 26, 409, 416. Subsequently, in August 2016, Plaintiff received seven sessions of physical therapy, after which he reported feeling better and also reported "[t]he pain [was] not as sharp." Tr. 26, 421-23. Yet, at his administrative hearing the same month, Plaintiff alleged disabling pain. Tr. 45.

In his first visit with chiropractor Scott F. Nichols, D.C. ("Dr. Nichols"), Plaintiff reported an injury onset date of December 5, 2015, not in 2007. Tr. 344, 346. He also reported that he needs limited assistance with common everyday tasks. Tr. 344. However, he then conflictingly stated that he has a significant inability to function without assistance. *Id*. In the same note, Plaintiff reported he is able to perform light duty work and household chores and then stated—also conflictingly—that he is totally disabled in that he cannot care for himself. *Id*. The only pain he identifies is in his lower back and buttocks. *Id*. The last chiropractor notes in March 2016 indicate pain at a level 3 out of 10, with fair to good prognosis and favorable results expected with compliance to recommended treatment plans. Tr. 348.

Based on the foregoing, the ALJ reasonably concluded that Plaintiff's receipt of infrequent and conservative treatment during his alleged period of disability did not support the existence of disabling pain. Tr. 26. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (providing that an adjudicator considers the "type, dosage, effectiveness, and side effects of any medication" a claimant takes,

and any other treatment received for relief of symptoms). *See also Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) ("[T]he ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility.") (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)).

The ALJ also considered that Plaintiff's pain improved with treatment, which also indicates his pain was not disabling. Tr. 25-26. The ALJ noted that in January 2016, Plaintiff told Dr. Nichols that his back pain was a "10 out of 10," but just a few weeks later his pain had improved to only a "3 out of 10." Tr. 25, 345, 347. Similarly, as noted above, Plaintiff reported "feeling better" with "not as sharp" back pain after less than a month of physical therapy in August 2016. Tr. 26, 421. Thus, the ALJ appropriately determined that Plaintiff's improvement with treatment indicated that his pain was not disabling. Tr. 25-26. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (The ALJ properly considered treatment notes indicating symptom improvement with treatment in denying disability application.).

The ALJ also properly considered the benign clinical observations that were inconsistent with disabling pain. Tr. 24-26. For example, in December 2015, more than two years after Plaintiff's neck and back pain allegedly began causing disabling pain and mobility difficulties, an examination found Plaintiff had good range of motion of his neck and "fairly normal" range of motion in all extremities. Tr. 24, 390. Later that month, an examination noted that Plaintiff had normal sensation, motor strength, deep tendon reflexes, and coordination. Tr. 398. Dr. Nichols' December 2015 examination found that Plaintiff had no abnormalities in his lower extremities; no muscle weakness; and negative straight leg raise tests. Tr. 25, 345. In May 2016, Dr. Capicotto observed that Plaintiff was "healthy," (Tr. 409), and contrary to Plaintiff's allegations of disabling pain making it difficult to stand and walk, Dr. Capicotto's examination found that Plaintiff could

walk on his heels and toes and could stand without any difficulty (Tr. 25, 409). Dr. Capicotto also noted Plaintiff had full strength, and straight leg raise testing was negative. *Id*.

Furthermore, despite Plaintiff's complaints of extreme neck and low back pain (*see* Tr. 45), a review of the record reveals no recent reference to prolonged problems with his neck. Dr. Alaimo's June 2016 examination found no neck muscle tenderness; negative straight leg raise testing; and no low back tenderness. Tr. 25, 416. Dr. Alaimo also noted Plaintiff had normal muscle bulk, normal muscle tone and strength, and that he walked on his heels and toes without difficulty. Tr. 25, 417. Plaintiff walked with a normal gait and had normal deep tendon reflexes. Tr. 25, 417. Similarly, the ALJ considered that consultative examiner Dr. Toor observed that Plaintiff walked with a normal gait; had full range of motion of his hips, knees, and ankles; had no sensory or strength deficits in his lower extremities; and had no muscle atrophy. Tr. 26, 336-37. The ALJ reasonably found that these benign examination findings indicated that Plaintiff's pain was not disabling. Tr. 24-26. *See* 20 C.F.R. § 404.1529(c)(2) (providing that objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of a claimant's symptoms).

The ALJ also found that medical imaging results were inconsistent with disabling pain. Tr. 24. Although Plaintiff complained of limiting neck pain, x-rays of Plaintiff's cervical spine in January 2014 showed signs of only some muscle spasms with no other abnormalities. Tr. 24, 380. X-rays of Plaintiff's lumbar spine taken that same day found some degenerative joint disease and no other significant pathology. Tr. 24, 381. Contrary to Plaintiff's complaints of disabling low back pain, a MRI scan of Plaintiff's lumbar spine in January 2016 was "normal," (Tr. 24, 341, 349), and a MRI scan of Plaintiff's thoracic spine also in January 2016 found evidence of only an

8

"old compression deformity with mild secondary degenerative change at T8"[1] and "no acute disease" (Tr. 24, 342, 350).

In reaching her decision, the ALJ also relied on Dr. Capicotto and Dr. Alaimo's conclusions drawn from the medical imaging and testing. Tr. 25. Dr. Capicotto noted that the MRI scan of Plaintiff's lumbar spine showed "fairly well-maintained disc heights and hydration throughout" with only some "mild narrowing" at L4-5. Tr. 25, 409. The ALJ also discussed Dr. Capicotto's conclusion that Plaintiff's MRI reflected mere "age-related changes" in Plaintiff's lumbar spine. Tr. 25, 410. In fact, Dr. Capicotto stated that his examination findings showed "little in the way of any" condition requiring surgery. Tr. 410. The ALJ also considered that Dr. Alaimo's EMG testing yielded normal results not suggesting radiating pain or neuropathy in Plaintiff's lower extremities. Tr. 25, 412, 417. The ALJ properly determined that these largely normal x-ray, MRI, and EMG results did not objectively demonstrate pain as limiting as Plaintiff alleged. Tr. 24. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (Substantial evidence supported the ALJ's finding that Plaintiff's subjective complaints were unsupported by objective medical evidence.).

The ALJ also considered that Plaintiff's back pain dated back to his 2005 ATV accident and, therefore, long pre-dated his alleged onset date. Tr. 26, 319, 330. Nevertheless, the ALJ noted that Plaintiff's examination results did not show any injury or significant worsening of his condition since 2005, or around his alleged onset date, and he worked full-time as a construction worker following his 2005 injury up until about the time of his alleged onset date. Tr. 26, 42, 52, 190-92. Indeed, Plaintiff worked from 2006 through 2013, the years following his 2005 injury through the year of his alleged onset of disability, earning more than $250,000.00 during this period. Tr. 190-92. Moreover, Plaintiff continued to work during the period of alleged disability.

---

[1] The thoracic vertebrae are usually numbered T1-T12 and are situated below the seven (7) cervical vertebrae (neck) and above the five (5) lumbar vertebrae (lower back). DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 2051 (32nd ed. 2012).

Tr. 26, 41, 53, 409. Plaintiff told Dr. Capicotto in May 2016 that he owned his own company (Tr. 409), and Plaintiff testified at the August 2016 hearing that he had last worked power washing and painting a deck only about three weeks earlier (Tr. 26, 41, 45). Based on the foregoing, the ALJ appropriately found that Plaintiff's longstanding ability to work following his back injury, as well as his continued work during his period of alleged disability, was another factor indicating that his pain was not disabling. Tr. 26. *See Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19-20 (W.D.N.Y. Dec. 23, 2014) (The ALJ properly discredited the claimant's allegations in part because the claimant had worked after his alleged onset date of disability.).

Moreover, the ALJ did not simply rely on "bare medical findings," as Plaintiff claims or "set [her] own expertise against that of" the opining physician. *See* ECF No. 8 at 10-11. Instead, in discounting Dr. Toor's opinion, the ALJ considered not only Plaintiff's pursuit of very little treatment for his allegedly debilitating pain and his improvement with mere conservative treatment (Tr. 27), but she also considered clinical assessments from Plaintiff's other medical providers that were inconsistent with Dr. Toor's opinions, as discussed throughout her decision. Tr. 24-28. The Court notes that these other opinions post-date Dr. Toor's examination by almost two years. Additionally, as noted above, Plaintiff had largely normal test results since Dr. Toor's examination, including a normal lumbar MRI study, a normal EMG study, and a thoracic MRI, which other than noting a healed compression fracture and some secondary degeneration, found no acute process. Tr. 428, 412, 409. Furthermore, the records indicate that Plaintiff self-treated his back pain with marijuana which he stated worked well for him. Tr 399, 400. The records also indicate that during the December 2015 time frame, Plaintiff was also able to go on a honeymoon in Florida. Tr. 385. Furthermore, during an emergency room visit in December 2015, Plaintiff stated his bilateral foot numbness was not work related, and he reported his pain as a 2 on a scale of 1 to 10. Tr. 395-396.

Of note, on discharge he reported no pain (Tr. 399), and although his 2014 consultative exam noted positive SLR, subsequent exams noted negative SLR (Tr. 409-410, 349).

Because it is the ALJ's duty to evaluate conflicts in the evidence, the Court finds the ALJ acted within her discretion, and the Court finds no error. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

## B. Substantial Evidence Supports the ALJ's RFC Determination.

Plaintiff also maintains the ALJ erred in her consideration of his pain complaints in that the ALJ's RFC finding does not mirror a medical opinion. Tr. 12-15. Plaintiff's argument is incorrect. The ALJ is not constrained to choosing from among the medical opinions in the record in reaching the RFC. Instead, the regulations provide that an ALJ must "assess [a claimant's] residual functional capacity based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a). Relevant evidence comprises medical and non-medical evidence, such as clinical examination findings, laboratory findings, prescribed treatment, and a claimant's response to treatment. *See* 20 C.F.R. § 404.1513(b) (2013). Where, as here, the record contains sufficient evidence for an ALJ to reach a decision, "it is the sole responsibility of the ALJ to weigh the medical evidence and resolve any material conflicts in the record." *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012). Indeed, the Second Circuit has recognized that, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

As explained above, the ALJ considered the entire record and reached an RFC finding consistent with the record as a whole. Tr. 23-28). While the ALJ discounted Dr. Toor's

11

questionnaire, the ALJ granted weight to the clinical assessments of Plaintiff's other medical providers, such as Dr. Capicotto and Dr. Alaimo. Tr. 25, 409-10, 412, 416-17. As noted, Dr. Toor's assessment predates Plaintiff's last round of imaging studies demonstrating normal findings by two years. The ALJ also considered that Plaintiff's pain improved after only a short series of physical therapy appointments, and that he had declined a pain management referral for an epidural injection, instead relying only on ibuprofen for pain management. Tr. 27, 409-10, 416, 421.

The ALJ also concluded that Plaintiff's lay-off from his last full-time job on "good terms" with his employer (rather than for poor performance), together with his continued work as a handyman after his alleged onset date, detracted from both Dr. Toor's opinion and Plaintiff's allegations of disability. Tr. 26, 41, 44, 53, 330. *See Cabrero-Gonzalez*, 2014 WL 7359027, at *19-20 (The ALJ properly discredited the claimant's allegations in part because the claimant had worked after his alleged onset date of disability.). In this case, Plaintiff had worked power washing and painting a deck only three weeks prior to the August 2016 administrative hearing where he alleged disabling limitations. Tr. 26, 41, 45. Furthermore, the ALJ reasonably considered that Plaintiff's daily activities, including his admission in January 2016 that he engaged in "light manual labor" and "light exercise" and his abilities to drive and ride in a car; travel alone; shop for groceries; and help take care of his pre-school aged son, were inconsistent with disabling pain. Tr. 25-27, 285, 287, 344. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.).

The Court notes Plaintiff has also contributed his own inconsistent statements to the record with respect to the date of the injury, the nature of the injury, and the impact on his personal life. For example, as noted above, in one treatment record he simultaneously states: (1) he needs limited assistance with common everyday tasks; (2) he has a significant inability to function without

assistance; (3) he is able to perform light duty work and household chores; and (4) he is totally disabled. Tr. 344. Under oath at his hearing, Plaintiff complained about his debilitating neck pain (Tr 45), but the Court can find no recent reference in the record to prolonged problems with his neck. Plaintiff then talks about the pain as emanating in the T8 region, yet this area is below the cervical region and again there are no recent records mentioning longstanding thoracic pain; rather, Plaintiff most predominantly complains of lumbar pain.

Consequently, the ALJ did not err when she reached an RFC finding not mirroring a medical opinion. *See Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) ("[T]he ALJ did not create a gap in the record when he assigned 'little overall weight' to Dr. Boehlert's opinion."). Given the ample evidence upon which the ALJ relied in reaching her decision, including Plaintiff's receipt of only minimal and conservative treatment; his symptom improvement with medical treatment; the benign examination findings of his medical providers; his ability to work for years with his longstanding back pain, and his continued work during the relevant period, the ALJ's decision was supported by substantial evidence. Tr. 23-28. Therefore, Plaintiff's argument that the ALJ's RFC finding was not supported by substantial evidence fails. *See Monroe*, 676 F. App'x at 8-9 (Contemporaneous treatment notes, including normal mental status findings, and Plaintiff's extensive activities constituted substantial evidence for the RFC.).

Although he objects to the ALJ's decision, Plaintiff has not established a reversible error. The ALJ properly reached her RFC finding and determined that Plaintiff could return to his past relevant work as a carpenter labor supervisor or adjust to other work existing in significant numbers in the national economy, including the jobs of hand packager, production worker, and inspector. Tr. 28-30. Because substantial evidence supports the ALJ's findings, the ALJ's decision should be affirmed. *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (The court

"conducts 'a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'") (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE